OATMAN, APPELLEE, *v.* FREY, APPELLANT.

(No. 984—Decided February 14, 1958.)

*Messrs. Long, Long & West* and *Mr. Andrew J. White, Jr.,* for appellee.

*Messrs. Hover, Smith & Shellhaas,* for appellant.

MIDDLETON, P. J.   This appeal is from a judgment entered by the Court of Common Pleas on a verdict for $11,500 in favor of the plaintiff in an action for personal injuries arising out of an automobile collision.

The first error assigned is that the court erred in refusing to admit certain evidence offered by the plaintiff.

During the examination of plaintiff's husband on cross-examination he was asked:

"Q. Mr. Oatman, you recall having a conversation at the hospital after the accident with Rev. Frey and his wife—meeting them and talking about this?   A. I met them at the hospital, but I just can't recall a thing that we said.

"Q. Did you at the time you talked to them at the hospital say to them that it was just one of those things, an unavoidable accident?   A. I don't know.

"Q. Have you recently made any statement to either of them to that effect?   A. I don't believe.

"Q. Did you during that conversation at the hospital make the statement you had seen them coming, slowed up, and then decided you could make it across the bridge?   A. I don't know."

Later, on direct examination, the defendant's wife testified:

"Q. Did you at any time after this accident see or talk to the driver of the other car—Mr. Oatman? A. In the hospital I did.

"Q. When was that with reference to the accident—how soon afterward? A. I can't tell you just how soon it was. As soon as we got to the hospital, but I don't know just how long it took us to get there.

"Q. Was your husband present at the time? A. He was in the same room.

"Q. Did you hear any conversation between Mr. Oatman and your husband?"

To this last question the defendant objected, and the objection was sustained by the court. Refusal to admit this testimony is the error complained of in the first assignment of error.

After the sustaining of the objection, the defendant abandoned further examination on the subject and did not proffer the answer that the witness would have given if permitted to answer.

Later, the defendant was called as a witness and testified concerning this conversation, as follows:

"Q. Rev. Frey, Mr. White yesterday on cross-examination asked you some questions in regard to conversations that you had with Mr. Oatman at the hospital, and I would like for you to state again what those conversations were? A. Mr. Oatman came over to the cot on which I was lying to speak to me, and to allay my fears that someone might have been very seriously injured, and stated the fact that there is no one seriously injured, as did both of the doctors, and then said to me 'I approached the bridge, knowing the bridge was there, and having seen the lights of a coming car I hesitated for a moment to enter the bridge or to approach the bridge, and then decided I had ample time to make it and proceeded to cross,' and then adds, 'It is just one of those things that was unavoidable.' "

Thus the conversation concerning which plaintiff's wife was asked, did go to the jury. Mr. Oatman did not deny the conversation; he simply said he did not know whether such a conversation took place. The questions asked Mrs. Oatman would in no way impeach the testimony of her husband or contradict his

testimony. Further, the subject of the conversation was abandoned after the court sustained the objection, and no proffer of the answer expected was made. The court finds this assignment of error not well taken.

Defendant's second assignment of error sets forth two claimed errors. First, the failure of the court to charge on the issue of unavoidable accident. Second, that the court erred in charging the jury on the question of punitive damages after having directed a verdict for defendant on that phase of the case.

This is a negligence action and the only question involved is whether the defendant was negligent and whether his negligence was the proximate cause of the injuries complained of. The plaintiff claims that the defendant was negligent, and this negligence the defendant denies.

If the accident was unavoidable there could be no negligence, and the converse is therefore true, that if one of the parties was negligent then the accident could not be said to be unavoidable.

The subject of unavoidable accident is very fully discussed in the case of *Uncapher* v. *Baltimore & Ohio Rd. Co.,* 127 Ohio St., 351, 188 N. E., 553. In the second paragraph of the syllabus the court states:

"Unavoidable accident occurs only when the disaster happens from natural causes, without negligence or fault on either side."

Judge Stephenson in his opinion makes the following statement, at page 358:

"* * * An unavoidable accident is such an occurrence or happening as, under all the attendant circumstances and conditions, could not have been foreseen or anticipated in the exercise of ordinary care as the proximate cause of injury by any of the parties concerned.

"Can there be an unavoidable accident when one of the parties is negligent? Most certainly not."

On page 359, the following statement appears:

"Under this state of the law, how must the pleader invoke the defense of unavoidable accident? Simple enough. He must

admit the accident in question, and aver that plaintiff was not negligent in any respect, and that he (defendant) was not negligent in any respect."

Upon hearing in the Court of Appeals, that court stated the law to be that a "Court may charge upon unavoidable accident only when pleadings or defense and evidence raise [the] issue."

With this statement the Supreme Court finds no error. The pleadings in the case here on appeal do not set forth a defense of unavoidable accident.

The testimony of defendant and the testimony of defendant's wife give support to the claim that the defendant was guilty of negligent conduct which resulted in plaintiff's injury.

The defendant, on cross-examination, testified in part as follows:

"Q. So that from a point from quarter to half a mile south from the point of collision almost up to the point of collision you continued to maintain your speed, although you were blinded by lights and you were watching approaching traffic, is that correct, sir? A. That is correct until the point at which I saw the barricade,—not the barricade, the guard rail.

"Q. When you were blinded by the lights, Mr. Frey, why didn't you stop? A. Because normally one does not stop even though they are blinded by lights.

"Q. Well, do you not think it would be the act of a reasonably prudent man when he can't see because he is blinded by lights to bring his vehicle to a stop until he can again see? A. If I were totally blinded, indeed.

"Q. Well, to the extent he were only partially blinded he ought to slow his speed if your theory is correct, is that what I am to believe? A. I would think not necessarily.

"Q. In other words, in your opinion even though one is partially blinded he may continue to drive his automobile at whatever speed he chances to be going without reducing his speed and take his chances on what may be ahead, is that what you believe? A. Yes.

"Q. Is that what you did that night, sir? A. Yes.

"Q. Pastor Frey, whatever the condition was on that road that night at the time when the collision occurred and at that

place, the condition was substantially the same as it had been when you came south on Route 117 earlier in the day? A. Correct, to my knowledge.

"Q. And you passed over this loose gravel or stone on that road as you came south that day? A. Possibly.

"Q. And the truth of the matter is you simply forgot that you might have loose gravel to contend with if an emergency arose, didn't you. A. Definitely.

"Q. And you were quite aware from your experience in driving automobiles that upon occasion you may anticipate that there will be loose gravel or stone on a road? A. Right.

"Q. And you will agree with me you ought to take such situations into consideration as you drive along a road? A. I do, sir."

Mrs. Frey, who was riding with her husband, testified on cross-examination as follows:

"Q. As a matter of fact, did you not say the automobile was going 50 miles an hour at least? A. I might have. I don't recall that.

"Q. Mrs. Frey, when you came to Bellefontaine on that day you traveled that very same road, didn't you? A. We did.

"Q. You came to Bellefontaine around noon time or early afternoon on that day, didn't you? A. After dinner.

"Q. And it was a nice day—good weather? A. I think so. As I recall it was.

"Q. And you passed the very scene where this collision occurred, didn't you? A. Yes.

"Q. Mrs. Frey, you saw the construction signs, the one-lane bridge sign, and the speed limit sign when you came down from the north down to Bellefontaine, didn't you? A. We did.

"Q. And you saw them on both the area north of the bridge and south of the bridge, didn't you? A. I don't recall. I know we saw it when you came to it. I don't recall the other.

"Q. Whatever the condition of debris or gravel on the road may have been at the time of the occurrence of the collision, that same condition prevailed when you came south along that road earlier in the day, didn't it? A. Yes, I suppose so.

"Q. And it was perfectly open and visible? A. It was open, yes.

"Q. And you crossed over what you knew to be a one-lane bridge as you came south? A. That is right.

"Q. When the collision occurred the automobile was over on its own side of the road as far as it could get to the guard rail, wasn't it? A. I would think maybe it was.

"Q. And your car went to the left of the center of the road and collided with the Oatman car? A. I imagine that it did.

"Q. Well, do you imagine it or is it a fact? A. Well, I think so."

Neither the pleadings filed in the case nor the evidence produced at the trial required nor would either warrant a charge upon the defense of unavoidable accident. Furthermore, there was no request to charge on the subject of unavoidable accident, and error cannot be predicated upon the failure of the court to charge upon a particular phase of the case unless such omission is called to the court's attention and specific instructions presented to the court, with the request that they be given to the jury, and such request refused.

In the instant case the defendant objected to the charge for failure of the court to charge upon unavoidable accident, but no request to so charge was made and there was no refusal by the court to so charge. *Whitiker, Admr.*, v. *Michigan Mutual Life Ins. Co.*, 77 Ohio St., 518, 83 N. E., 899. In other words, counsel must not only direct the court's attention to the claimed omission, but must also clearly indicate what he claims the law to be, and what he desires to have the court give. Fess, 1 Instructions to Juries in Ohio, 21, Section 5.2.

The court finds no error in the failure of the court to charge on the subject of unavoidable accident.

Defendant also claims the court erred in charging the jury on punitive damages after having directed a verdict for him on this phase of the case.

Plaintiff, in her petition, set forth as a second cause of action, a claim for punitive damages. At the conclusion of plaintiff's case, the defendant asked the court to direct a verdict in his favor on the second cause of action. The court sustained defendant's motion for a directed verdict and stated to the jury that there had been no evidence to support the claim of punitive damages, and directed the jury to return a verdict in the case

as to punitive damages in favor of the defendant. The court, in its charge to the jury, after instructing them as to compensatory damages, stated as follows:

"If you find by a preponderance of the evidence that the plaintiff is entitled to recover punitive damages from the defendant, you will determine that amount which in no event can exceed the amount claimed by the plaintiff of $25,000. The court repeats—"

At this point counsel for plaintiff interrupted the court with the remark, "Mr. White: Will you not correct that? That is out of the case now." "The Court: The court has already instructed the jury on that, and it is just a repitition." The court then continued its charge, and stated:

"You will be given three verdicts in this case. You will be given one verdict in favor of the plaintiff. You will be given one verdict in favor of the defendant. You will also be given a verdict with reference to these punitive damages. All 12 of your number will sign the verdict which reads:

" 'We, the jury being duly impaneled and sworn, find the issue in the second cause of action in this case in favor of defendant Philemon L. Frey in the sum of $25,000 as punitive or exemplary damages.'

"That is the one the court has mentioned all 12 of you will sign."

The jury returned into court, two verdicts, one in favor of the plaintiff on the first cause of action for $11,500, and a verdict in favor of the defendant on the second cause of action. Both verdicts were signed by all twelve members of the jury.

It is evident that the jury was not misled or confused by the court including in his charge the above quoted statement concerning punitive damages. While it was error to include the charge on punitive damages, such error was not, in the opinion of the court, prejudicial.

The third and fourth assignments of error urged by the defendant are that the damages were excessive and appear to have been given under the influence of passion and prejudice and are not sustained by the evidence.

After a complete study of the record the court is not able to say that the verdict is excessive, nor do we find there is any

evidence to indicate that the verdict was given under the influence of passion and prejudice. There is ample, competent and credible evidence to support the verdict. Assignments of error 3 and 4 are therefore overruled.

The fifth and final assignment of error charges irregularity in the trial and proceedings in that the verdict of the jury was received and changed, contrary to law.

The court gave the jury three forms of verdict, to wit, one verdict in favor of the plaintiff on the first cause of action; one verdict in favor of the defendant, and one verdict for the defendant on the second cause of action. The irregularity claimed as error relates to the verdict for the plaintiff on the first cause of action. The form of the verdict as handed to the clerk and to the court read as follows:

"Verdict for Plaintiff.

"Court of Common Pleas, Logan County, Ohio

"Mercedes A. Oatman, Plaintiff v. "Philemon L. Frey, Defendant

May Term, A. D. 1957
No. 24196.

Civil Action—Verdict for Plaintiff.

"We, the jury, being duly impaneled and sworn find the issues in the first cause of action in this case in favor of the plaintiff, and assess the amount due to the plaintiff from the defendant, the said Mercedes A. Oatman, ($11,500) eleven thousand five hundred dollars.

"And we do so render our verdict upon the concurrence of 12 members of our said jury, that being three-fourths of our number. Each of us said jurors concurring in said verdict signs his name hereto this 9th day of July, 1957."

This verdict was signed by all twelve members of the jury. While the clerk was reading the verdict it was discovered that the defendant's name was stated as *Mercedes A. Oatman* instead of *Philemon L. Frey*. Upon this discovery the court inquired of the jury if they all agreed for the clerk to write in the name of the defendant and erase plaintiff's name. The foreman alone replied, "It is okey with me if it is with the rest." The record shows no reply by the other jurors. The clerk retired to

her office, erased plaintiff's name from the verdict and typed in the defendant's name. Upon her return to the courtroom and showing the verdict to the court, the court directed the clerk to read the verdict as corrected. This was done, and the court inquired of the jury, "Members of the jury, is this your verdict?" All members of the jury gave affirmative answers. Defendant's counsel excepted to the changing of the verdict and objected to the verdict being in the control of the clerk outside the courtroom from the time it was brought in by the jury and the time it was returned.

The verdict as returned by the jury finds, on the issues joined in the first cause of action, for the plaintiff and assesses the amount due from the defendant as $11,500. There was only one plaintiff, and only one defendant and his name was Philemon L. Frey. Inserting the name of the plaintiff was, at most, an irregularity in form and not of substance. The irregularity was discovered and called to the jury's attention before the jurors separated. While it does not appear affirmatively that all the members of the jury gave their consent to the correction of the verdict before it was made, it must be held that the comments and circumstances at the time sufficiently indicated such consent. Further, after the correction was made, the verdict as corrected was again read to the jury and the members were asked if it was their verdict and they replied in the affirmative. Any error in the proceedings could be nothing more than a technical irregularity and cannot be considered prejudicial, requiring a reversal of the judgment.

The court finding no prejudicial error in any of the particulars set forth in the assignments of error and argued in appellant's brief, the judgment of the lower court is affirmed.

*Judgment affirmed.*

YOUNGER and GUERNSEY, JJ., concur.